UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

FLORIDALMA CHOY,                                                                         Petitioner,

v.                                                                          Civil Action No. 4:25-cv-197-DJH

JASON WOOSLEY, Jailer, Grayson County
Detention Center et al.,                                                               Respondents.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Petitioner Floridalma Choy, a noncitizen resident of Indiana, challenges her detention by immigration authorities and seeks a writ of habeas corpus. (Docket No. 1) Choy alleges that her Order of Supervision was revoked without proper notice. (*Id.*) The respondents oppose Choy's petition. (D.N. 8) Given the complex issues presented by the case and unresolved factual disputes, the Court held a hearing and ordered supplemental briefing from the parties (D.N. 12; D.N. 25), which has since been provided (D.N. 18; D.N. 21; D.N. 26). After careful consideration, the Court will grant the petition and order Choy's release for the reasons explained below.

**I.**

Choy is a national of Guatemala who entered the United States without inspection in August 1989. (D.N. 1, PageID.5 ¶ 20) She applied for asylum on April 5, 1993. (*Id.*) On June 26, 1998, she received an Employment Authorization Document. (*Id.*) The United States Citizenship and Immigration Services conducted an asylum interview with Choy on April 18, 2007. (*Id.* ¶ 21) Following the interview, she was placed in removal proceedings. (*Id.*, PageID.6 ¶ 21) Choy applied for cancellation of removal proceedings; on April 20, 2009, an immigration judge denied her application and granted her voluntary departure. (*Id.* ¶ 22) "She was unable to leave the United States," however, and was placed on an Order of Supervision

1

(OSUP).[1]  (*Id.*)  "On December [23], 2025, at 8:30 am, . . . Choy received a phone call . . . [directing her] to report immediately; she reported as directed immediately to the [OSUP] office in the Indianapolis, Indiana office."[2]  (*Id.* ¶ 25; D.N. 8, PageID.79 ¶ 5)  At that time, Choy was detained and served a "Notice of Revocation of Release."  (D.N. 8, PageID.79 ¶ 5; D.N. 8-1; D.N. 8-3, PageID.115–16 ¶¶ 7–9)  The notice stated that the decision to detain Choy "ha[d] been made based on a review of [her] official alien file and a determination that there [we]re changed circumstances in [her] case."  (D.N. 8-1, PageID.107)  It further stated:

> ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you.  On April 12, 2011, you were ordered removed to Guatemala by an authorized U.S. DHSJ official and you are subject to an administratively final order of removal.  Your case is under current review by Guatemala for the issuance of a travel document.
>
> Based on the above, and pursuant to 8 C.F.R. § 241.4 / 8 C.F.R.§ 241.13, the Field Office Director (formerly district director)[] having determined that revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner, you are to remain in ICE custody at this time.  You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation.  You may submit any evidence or information you wish be received in support of your release.  If you are not released after the informal interview, you will receive notification of a new review, which will occur within approximately three months of the date of this notice.

(*Id.*)  Choy was given an interview with a deportation officer who "explained to Choy the reasons for the revocation of her supervised release and gave her an opportunity to respond and submit any additional information."  (D.N. 8-3, PageID.116 ¶ 8)  The officer who conducted the interview

---

[1] One page of Choy's petition uses the abbreviation "ISAP," apparently in error.  (D.N. 1, PageID.6 ¶¶ 22, 25)  "OSUP" and "order of supervision" are otherwise used throughout the petition.  (*See generally* D.N. 1)

[2] Choy's petition alleges that the date of this incident was December 19, 2025 (D.N. 1, PageID.6 ¶ 25); however, her reply clarifies that in fact the date was December 23, 2025.  (D.N. 11, PageID.149 n.1)

does not attest to having provided any reasons for revocation different from those stated in the notice. (*See generally* D.N. 8-3)

Choy seeks a writ of habeas corpus against Jason Woosley, in his official capacity as the Grayson County Jailer; Samuel Olson, in his official capacity as the Chicago ICE Field Office Director; Todd Lyons, in his official capacity as the Acting Director of Immigration and Customs Enforcement; Kristi Noem, in her official capacity as the Secretary of the U.S. Department of Homeland Security; and Pamela Bondi, in her official capacity as the U.S. Attorney General. (D.N. 1, PageID.3–4) She alleges "unlawful" revocation of her Order of Supervision "in violation of due process," the Immigration and Nationality Act (INA), and the Administrative Procedure Act (APA). (*Id.*, PageID.2–3 ¶ 7; *id.*, PageID.41–42) Choy seeks an order "reinstating her [Order of Supervision] and releasing her from detention under the same or similar conditions" previously imposed and requiring compliance with the relevant regulations in the event she is re-detained. (*Id.*, PageID.3 ¶ 7; *id.*, PageID.40–42) Respondents argue that they complied with the relevant regulations governing revocation of OSUP (D.N. 8, PageID.77) and that even if the regulations were violated, release is not the proper remedy (D.N. 21, PageID.246–47).[3]

**II.**

Choy argues that "[t]he revocation of [her] OSUP [was] strictly governed by federal regulations, including 8 C.F.R. §§ 241.4 and 241.13." (D.N. 1, PageID.2 ¶ 6) She contends that the notice given by the respondents in this case was insufficient because it did not "provide[ her] a meaningful opportunity to respond as required under [§ 241.13]." (D.N. 18, PageID.211)

---

[3] After Choy filed her petition, Respondents transferred her to another location. (D.N. 5, PageID.60–61; D.N. 6; D.N. 6-1) The Court entered an order prohibiting the respondents from further transferring or deporting Choy during the pendency of this case. (D.N. 7) Respondents move to set aside that order. (D.N. 9) Because the Court will grant Choy's petition, Respondents' motion will be denied as moot.

Respondents argue that no notice was necessary in this case under the relevant regulations (D.N. 8, PageID.90–91; D.N. 21, PageID.227) and contend that even if notice was needed, "Choy's order of supervision was revoked through proper authority, with proper notice, with an individualized assessment, and with an opportunity to be heard and to contest her revocation." (D.N. 8, PageID.77)

An agency violates due process when it fails to follow its own "existing valid regulations." *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). "To prove an *Accardi* claim, and a violation of Due Process, the claimant must also 'demonstrate prejudice resulting from the violation.'" *K.E.O. v. Woosley*, No. 4:25-cv-74-RGJ, 2025 WL 2553394, at *5 (W.D. Ky. Sep. 4, 2025) (quoting *Am. Farm Liens v. Black Ball Freight Serv.*, 397 U.S. 532, 538–39 (1970)).

**A.     Necessity of Notice and Which Regulations Apply**

Respondents contend that Choy was not entitled to notice and an interview under the relevant law and regulations. (D.N. 8, PageID.90–91 ¶ 28; D.N. 16, PageID.184–85) Specifically, they argue that § 241.4(*l*) applies and only extends notice and an interview to individuals detained for violating a condition of supervision (D.N. 8, PageID.90–91 ¶ 28; D.N. 16, PageID.184–85) and that § 241.13 does not apply because "[t]here is no indication, or basis of any ICE determination that there was no significant likelihood of Choy's removal in the reasonably foreseeable future."[4] (D.N. 21, PageID.230) Choy contends that § 241.13 is implicated since "release was previously granted because removal was not reasonably foreseeable," and that § 241.13 entitled her to notice "of the reasons for revocation and . . . an initial informal interview to allow [her] to respond" to those reasons. (D.N. 1, PageID.23–24, 39 ¶¶ 77, 134)

---

[4] To enhance readability, the Court italicizes the letter *l* when referring to § 241.4(*l*).

4

Section 241.13 governs revocation of OSUP when ICE has previously "ma[de] a determination . . . that there is no significant likelihood of removal in the reasonably foreseeable future." 8 C.F.R. § 241.13(b). Once ICE has made that determination, ICE may subsequently "revoke [the] alien's release . . . and return the alien to custody if, on account of changed circumstances, [it] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." § 241.13(i)(2). "Upon revocation, the alien will be notified of the reasons for revocation of his or her release[, and ICE] will conduct an initial informal interview . . . to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." § 241.13(i)(3). "[I]f the alien is not released from custody following the informal interview . . . , the provisions of § 241.4 shall govern the alien's continued detention pending removal." § 241.13(i)(2). When § 241.13(i) governs revocation, the procedures outlined for revocation under § 241.4(*l*) do not apply. *See Saengnakhone S. v. Noem*, No. 25-cv-4775, 2026 WL 34132, at *5 (D. Minn. Jan. 6, 2025) ("ICE previously determined there was not a significant likelihood of his removal, and therefore § 241.4 does not govern the re-detention decision." (citations omitted)).

In this case, ICE explicitly invoked both § 241.4 and § 241.13, stating that its decision to detain Choy was based on a "determination that there [were] changed circumstances in [her] case." (D.N. 8-1, PageID.107)  Specifically, the notice stated that "ICE ha[d] determined that [Choy could] "be expeditiously removed from the United States" (*id.*), language that parrots § 241.13(i)(2). While Respondents appear to dispute that there was ever a time when there was "no significant likelihood of [Choy's] removal in the reasonably foreseeable future" (D.N. 21, PageID.230 (quotation omitted)), no evidence in the record contradicts ICE's own invocation of

5

§ 241.13.[5] *See Qui v. Carter*, No. 25-3131-JWL, 2025 WL 2770502, at *2 (D. Kan. Sep. 26, 2025) ("[T]he Notice of Revocation of Release for petitioner explicitly cited both Section 241.4 and Section 241.13. Thus the Notice itself contradicts respondents' present argument that the procedural requirements of Section 241.13 do not apply here." (emphasis omitted)).

When an Order of Supervision is revoked pursuant to § 241.13(i), notice and an interview are required. *See K.E.O.*, 2025 WL 2553394, at *4; *Saengnakhone S.*, 2026 WL 34132, at *3–4. Respondents offer no argument to the contrary. (*See generally* D.N. 8; D.N. 21) Therefore, because Choy's supervised release was revoked under § 241.13(i), she was entitled to notice and an interview. *See* § 241.13(i)(3).

**B.     Adequacy of Notice**

Choy argues that the notice provided is inadequate because it uses "boiler plate" language that does not allow her to "understand the factual basis" for revocation. (D.N. 18, PageID.211) Respondents argue that "Choy was not entitled to any recitation of facts," claiming that Choy was entitled to at most "notice only of reasons for revocation[]." (D.N. 21, PageID.229) Respondents also contend that Choy "received [a recitation of facts] . . . anyway" in the notice provided to her (D.N. 8-1) when she was detained. (D.N. 21, PageID.229)

When ICE re-detains an individual under § 241.13, the regulation requires "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future."[6] *Kong v. United States*, 62

---

[5] Choy's Order of Supervision does not provide any information that might clarify whether § 241.13 or § 241.4 applies. (*See* D.N. 8-2)

[6] The respondents contend that *Kong* is flawed because the "regulation contains no indication of [a need for an] individualized determination[;]" apparently interpreting that phrase "individualized determination" to mean any change must impact solely the petitioner. (D.N. 21, PageID.236) But an "individualized determination" does not require that a change in circumstances affect only the individual petitioner; rather, it requires ICE to scrutinize whether a change in circumstances will

6

F.4th 608, 619–20 (1st Cir. 2023) (citing § 241.13(i)(2)). ICE's explanation for revoking a petitioner's supervision should provide "adequate notice of the basis for the revocation decision such that [she can] meaningfully respond at the post-detention 'informal interview.'" *Perez-Escober v. Moniz*, 792 F. Supp. 3d 224, 226 (D. Mass. 2025) (citations omitted). "Simply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough. Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond." *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 787 (D. Minn. 2025).

Although a habeas petitioner bears the ultimate burden of showing entitlement to relief, in the context of a habeas challenge to re-detention under § 241.13, ICE bears the burden of producing some evidence of changed circumstances.[7] *See Roble v. Bondi*, 803 F. Supp. 3d 766, 772 (D. Minn. 2025) ("Although [Petitioner] has the ultimate burden of proving entitlement to habeas relief, the regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future." (citations omitted)); *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D.

---

impact the petitioner based on his or her individual circumstances. *See Nguyen v. Noem*, 797 F. Supp. 3d 651, 665–66 (N.D. Tex. 2025) ("To be sure, there must be changed circumstances [indicating] that there is a significant likelihood that the particular alien may be removed in the reasonably foreseeable future. . . . But there is no reason that a broad change in circumstances that applies to a broad group of aliens cannot have the effect of changing the circumstances of each of those particular aliens and thus let ICE determine that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." (citations omitted)).

[7] Citing *Caver v. Straub*, 349 F.3d 340 (6th Cir. 2003), Respondents suggest that they need not show changed circumstances. (D.N. 21, PageID.237–38) But *Caver* involved a § 2254 petition based on ineffective assistance of trial counsel, not a petition concerning re-detention under immigration regulations. *See* 349 F.3d 340. Requiring ICE to produce some evidence of changed circumstances, as required by the relevant regulations, is not inconsistent with the principle that Choy bears the ultimate burden of showing entitlement to release. *See Roble v. Bondi*, 803 F. Supp. 3d 766, 772 (D. Minn. 2025).

Tex. Aug. 2, 2025) ("[U]pon revocation of supervised release, it is the Service's burden to show a significant likelihood that the alien may be removed."); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 n.2 (D. Mass. 2025).

The respondents point to cases holding that under § 241.4(*l*), ICE need not demonstrate what "facts or factors, if any, it considered in deciding to revoke" an Order of Supervision. (D.N. 21, PageID.227 (quoting *Zhen v. Doe*, No. 3:25-cv-01507-PAB, 2025 WL 2258586, at *10 (N.D. Ohio Aug. 7, 2025))) But even assuming little explanation is required when solely § 241.4(*l*) applies, courts have required some explanation of the facts justifying revocation under § 241.13.[8] *See, e.g.*, *Sarail A.*, 803 F. Supp. 3d at 787; *Hall v. Nessinger*, No. 25-cv-667-JJM-PAS, 2026 WL 18583, at *7 (D.R.I. Jan. 2, 2026).

In this case, the notice informed Choy that her case was "under current review . . . for the issuance of a travel document" and that ICE had determined that she could be "expeditiously removed" to Guatemala. (D.N. 8-1, PageID.107)  The mere request of a travel document by ICE is not a changed circumstance supporting re-detention under § 241.13. *Nguyen v. Hyde*, 788 F. Supp. 3d at 152; *Hall*, 2026 WL 18583, at *8; *see also Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents have not provided any

---

[8] Most of the cases cited by Respondents do not apply § 241.13 (*see* D.N. 21, PageID.233 (citing *Zhen*, 2025 WL 2258586; *Tanha v. Warden, Balt. Det. Facility*, No. 1:25-cv-02121-JRR, 2025 WL 2062181 (D. Md. July 22, 2025); *Espinoza-Sorto v. Agudelo*, No. 1:25-CV-23201-GAYLES, 2025 WL 3012786, at *3 n.7, *6 (S.D. Fla. Oct. 28, 2025); *Westley v. Harper*, No. 25-229, 2025 WL 592788, at *7 n.62 (E.D. La. Feb. 24, 2025))), or do not meaningfully analyze the provision because they find that an alleged violation of § 241.13 alone would not merit relief. (*See id.*, PageID.233, 242 (citing *Douglas v. Baker*, No. 25-cv-2243-ABA, 2025 WL 2687354, at *5–6 (D. Md. Sep. 19, 2025); *Morales Sanchez v. Bondi*, No. 5:25-cv-02530-AB-DTB, 2025 WL 3190816, at *3 (C.D. Cal. Oct. 3, 2025); *Abedi v. Carter*, No. 25-3141-JWL, 2025 WL 3209009, at *2 (D. Kan. Oct. 6, 2025); *Rocha v. Rice*, No. 1:25-CV-02147 SEC P, 2025 WL 3769275, at *1 n.1 (W.D. La. Dec. 31, 2025); *Ahmad v. Whitaker*, No. C18-287-JLR-BAT, 2018 WL 6928540, at *5 (W.D. Wash. Dec. 4, 2018), *report and recommendation adopted*, No. C18-287-JLR, 2019 WL 95571 (W.D. Wash. Jan. 3, 2019)))

details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around."); *cf. Saengnakhone S.*, 2026 WL 34132, at *5 (finding explanation of changed circumstances adequate where "[f]ederal authorities ha[d] requested a travel document . . . and expect[ed] it to be approved soon" and evidence showed that the country at issue had recently "resumed issuing travel documents" after a period of not accepting deportees, that twenty individuals from the petitioner's area had been removed to that country in the preceding nine months, and that a "similar document request was approved quickly"). Respondents have submitted no evidence suggesting that the purported document request is likely to be approved. In fact, Respondents' own evidence contradicts the sole "changed circumstance[]" identified in the notice (D.N. 8-1, PageID.107): the deportation officer who conducted Choy's interview attests that he is "familiar with the processes involved in obtaining travel documents for aliens in order to facilitate their removal" and that "ICE does not need a valid passport to effectuate Choy's removal as Guatemala participates in Electronic Nationality Verification, so a passport or temporary travel document [is] not required for removal."[9] (D.N. 8-3, PageID.117 ¶ 15)

The respondents also assert that Choy's continued failure to depart voluntarily constitutes a changed circumstance. (*See* D.N. 21, PageID.231) While this factor can support a finding of changed circumstances in some cases, *see* § 241.13(f) ("The HQPDU shall consider all the facts of the case including, but not limited to, the history of the alien's efforts to comply with the order of removal . . . ."), there is no evidence that the respondents told Choy that this was a reason for

---

[9] Counsel for Respondents also stated that no travel document was necessary. (*See* D.N. 16, PageID.188 ("[I]f somebody's engaging in voluntary departure, of course they need to go get travel documents. But when they're engaged in a departure that is imposed by ICE, that's not necessary."))

9

her re-detention when they provided her notice.  (*See* D.N. 8-1; D.N. 8-3)  Respondents may not rationalize a re-detention after the fact; rather, the reason must be articulated to the detainee so that she has "a meaningful opportunity to respond to the reasons and to submit evidence in opposition." *Sarail A.*, 803 F. Supp. 3d at 787; *see id.* at 788 (rejecting "Respondents' post-hoc explanation" of changed circumstances as "too little, and too late").

In sum, the notice provided to Choy did not satisfy the requirements of § 241.13 because it failed to adequately explain what circumstances had changed so that Choy could respond accordingly.[10]  *Id.* at 787; *Nguyen v. Hyde*, 788 F. Supp. 3d at 152; *Hall*, 2026 WL 18583, at *8; *see also Hoac*, 2025 WL 1993771, at *4.  This failure prejudiced Choy and violated her due process rights by denying her an opportunity to respond.  *See Hall*, 2026 WL 18583, at *7 ("ICE's failure to provide a noncitizen with adequate notice of its basis for revoking supervised release violates the noncitizen's due process rights." (citations omitted)); *see also Rasakhamdee v. Noem*, No. 3:25-cv-02816-RBM-DEB, 2025 WL 3102037, at *5 (S.D. Cal. Nov. 6, 2025) ("ICE's failure to comply with the requirements of § 241.4 and § 241.13 'prejudiced interests of [Petitioner] which were protected by the regulation[s].'" (alterations in original) (citation omitted)).

## C.     Administrative Procedure Act Claims

Choy asserts various claims under the APA.  (*See* D.N. 1, PageID.30–34)  "But to state a claim under the APA, the Petitioner must show that there is 'no other adequate remedy in court.'" *Singh v. Noem*, No. 2:25-cv-00157-SCM, 2026 WL 74558, at *7 (E.D. Ky. Jan. 9, 2026) (quoting *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 427 (6th Cir. 2016); 5 U.S.C. § 704).

---

[10] In light of the Court's conclusion that § 241.13 governed the revocation of Choy's Order of Supervision and § 241.4 did not apply at the revocation stage, the Court need not address Choy's contention that Eric Weiss lacked authority to revoke her Order of Supervision under § 241.4 (D.N. 11, PageID.153–54).

When a petitioner is subject to detention under immigration statutes, habeas provides an adequate remedy, and thus APA review is not available. *Id.* (citing *Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring)); *see also Intriago-Sedgwick v. Noem*, No. 1:25-cv-01065-MIS-LF, 2025 WL 3688155, at *8 n.7 (D.N.M. Dec. 19, 2025) ("Courts have found that immigration detention may not be challenged under the APA, both because detention is not a final agency action and because an adequate remedy may be sought through habeas corpus." (citations omitted)). Therefore, the Court will not consider Choy's APA claims. *See Singh*, 2026 WL 74558, at *7; *see also Orellana v. Raycraft*, No. 1:25-cv-1446, 2025 WL 3484747, at *9 n.6 (W.D. Mich. Dec. 4, 2025) ("Here, the Court has concluded that the writ of habeas corpus provides an adequate remedy . . . . Accordingly, 'habeas corpus, not the APA, is the proper vehicle here,' and the Court declines to consider Petitioner's APA claims." (quoting *J.G.G.*, 604 U.S. at 674 (Kavanaugh, J., concurring))).

**D.      Release as a Remedy**

The respondents contend that even if Choy's revocation was unlawful, Choy has not shown that she was prejudiced by any failure to follow regulations and thus "release would not be an appropriate remedy." (D.N. 21, PageID.246–47) Choy argues that release is appropriate and that *Karki v. Raycraft*, No. 2:25-cv-13186, 2025 WL 3516782 (E.D. Mich. Dec. 8, 2025), the "primary case" relied on by respondents, involved "inherently different" circumstances. (D.N. 26, PageID.260–61)

"[A] § 2241 petitioner is entitled to habeas corpus relief" based on a denial of due process "only where [she] shows resulting prejudice." *Corley v. Hogsten*, No. 0:11-00097-HRW, 2011 WL 3809939, at *3 (E.D. Ky. Aug. 25, 2011) (citations omitted). Therefore, if a procedural defect has not actually deprived a petitioner of the ability to challenge a determination, *id.* at *3–4, or

11

evidence shows that detention was clearly justified and that the petitioner ultimately received a chance to respond, a court should not order release as a remedy. *Karki*, 2025 WL 3516782, at *7.

In this case, Choy has been prejudiced by the denial of due process because the respondents failed to provide her with clear notice of the reasons her supervised release was revoked and have provided conflicting explanations for the revocation in filings before this Court. (*Contrast* D.N. 8, PageID.99 ("As explained above, Choy's supervised release was revoked in accordance with 8 C.F.R. §§ 241.4 and 241.13), *with* D.N. 21, PageID.231 ("8 C.F.R. § 241.13, and its reference to changed circumstances, does not apply to [Choy]."); *contrast* D.N. 8-1, PageID.107 ("Your case is under current review by Guatemala for the issuance of a travel document."), *with* D.N. 16, PageID.188 ("[I]f somebody's engaging in voluntary departure, of course they need to go get travel documents. But when they're engaged in a departure that is imposed by ICE, that's not necessary.")) Because no clear reason has ever been articulated, Choy continues to be denied a meaningful opportunity to challenge the revocation. *Cf. Karki*, 2025 WL 3516782, at *1–3, *6–7 (denying release after an improper revocation where respondents had since shown that a request for travel documents had been approved and that ICE had procured tickets to return the petitioner to his country of origin, and the petitioner had pursued numerous other avenues for relief that helped inform him of the reasons for his detention such that he could respond over the course of eight months of proceedings). Under these circumstances, release is appropriate. *See K.E.O.*, 2025 WL 2553394, at *7 (ordering release despite provision of notice months after arrest and observing that "[a]s a remedy, courts across the country have ordered the release of individuals stemming from ICE's illegal detention" (citations omitted)); *Rasakhamdee*, 2025 WL 3102037, at *5.

IV.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Choy's petition for habeas relief (D.N. 1) is **GRANTED**. Respondents are **DIRECTED** to immediately release Choy from custody, subject to the conditions of her preexisting Order of Supervision. In the event Choy is re-detained, Respondents **SHALL** provide her with notice that complies with the relevant regulations. Respondents **SHALL** certify compliance with the Court's Order by a filing on the docket no later than **February 9, 2026**.

(2) Respondents' motion to set aside the Court's December 31, 2025 Order (D.N. 9) is **DENIED** as moot.

(3) Upon receipt of the notice of compliance, this matter will be **CLOSED**.

February 6, 2026

David J. Hale, Chief Judge
United States District Court